Good morning, Your Honors. Quinn Denver for the petitioner appellant. I would like to reserve two minutes, Your Honor, if I could. The issue we bring before the Court is whether the presence of a biased juror on Mr. Perry's case deprived him of his right, the Sixth Amendment right, to a fair and impartial juror. This was a very unique case. I tried cases for 15 years, and I was a district court judge. It's the first time somebody said, yeah, I know a lot of people here. Always it was a no. Well, unfortunately, they didn't follow up enough to figure out exactly how she knew him, I think. But I think you're right. But there are two considerations that guide the Court's review. First of all, there's no question of procedural default. That, as the district court held, that was waived. And because there was no decision on the merits in the State court, the Court decides it's de novo rather than under the depot law. So the facts are that juror number 12 was employed as a Solano County probation officer and a juvenile correctional officer. She served in the intake unit at Solano County Juvenile Hall on two separate occasions when Mr. Perry was held there in 2002 and 2004. The Court has held that under the doctrine of presumed bias, that bias is implied to presume when the relationship between a prospective juror and some aspect of litigation is such that it's highly unlikely that the average person could remain impartial in his or her deliberations under the circumstances. And we think it's highly unlikely that an average person who had served as a jailer for the defendant, who knew that he had two prior run-ins with the law, could remain impartial. What do you do with the statement you made that there was a – that it was – she was partial in favor of the defendant? Is it rather an instant statement? I think there's a couple of things to be said about that. First, the ordinary meaning of the word positively biased does not mean biased in a positive way. It means I'm certainly or definitely biased. And I think you also, from the fact that given her relationship with the defendant, as I said, she wasn't a Cub Scout den mother. She was at one of his jailers and knew about his prior incarcerations. I think that if there's any question of which way the bias was. Does it matter? Does it matter? And it doesn't matter, I was going to say that, because we are putting in, I presume, bias. That's the doctrine. And therefore, her protestation that she's not biased, or a finding by the trial court, which I would like to deal with, is irrelevant. The Court has just answered the legal question about would it have been a personal case. All right. Counsel, Judge Gould, if I could ask you a question. You said the Court has said, and you stated the standard on presumed biases, I understand it. But when you said the Court, did you mean the Supreme Court or did you mean this Court, the Ninth Circuit? The quote I used, I'm sorry. This isn't that case, so we really need to look at Supreme Court precedent. Well, Your Honor, first of all, the quote I did make was from Fields v. Brown by the Supreme Court. I don't need to clearly establish Supreme Court law in this case because the Antiterrorism Act, the idea that you're reviewing a State court decision on the merits is inapplicable here. There was no State court decision on the merits, therefore, I don't need to clearly establish the law. Oh, there is clearly established law in the Supreme Court. I think the Ninth Circuit law, Fields v. Brown in the United States v. Gonzalez, establishes it for purposes of this case. Can you step back on that? What you're saying is that when they amended the habeas to include the sections on clearly established law, that we're going under the other section where we don't need to address whether or not there's a misapplication or clearly established? Yes, Your Honor. The part where you're reviewing the reasonableness of a State court decision on the merits of a Federal claim. This case, we have a Sixth Amendment claim, but no State court decision on the merits. They decided it on a procedural basis, did not reach the merits. So under the Pirtle case, I think it's Pirtle v. Morgan, your review is de novo. You don't defer to that. You don't look to it at all. You decide it as a matter of law. Now, the State mainly claims, I think, mainly claims, and I don't think they disagree with that either as to its de novo review. What they do claim is that there was a finding of fact by the trial court that must be presumed to be correct. And I think our answer to that, we said that in the reply brief, is, number one, there was never any finding of fact by the trial court. All the trial court did was ask a couple of questions. Secondly, there's an exception to that presumption of correctness when the material facts were not developed by the court making the finding. And in this case, the trial court failed to develop the material facts. He did not ask, first of all, you say you worked with him. Where did you work with him? And that would have brought out the fact of the employment and the knowledge about the prior record. The second thing is the court never asked, what do you mean by positively biased? Left it open. And the third thing, I think, Judge McKeown said, the fact that there would be a finding of no bias is irrelevant when we're proceeding on a theory of presumed or implied bias. Could I ask about the record? I saw some notation that some of the voir dire was recorded but not transcribed. Is that correct? I think the point that the Attorney General made was that any we have a certain part of the voir dire, there may have been other parts of it that we don't have. Right. And I think that's the point. What we have is this questioning by the court itself and by the prosecutor of Juror No. 12, which brought out the fact that she said she had worked with him and that she was positively biased. Now, we now know that she was – how she worked with him and why she would have maybe been biased against him because of her – the relationship he had. She was a jailer and she knew that he'd been in twice before. Well, let me ask you this. Is there any suggestion that the voir dire that was reported but not transcribed related to Juror No. 12? I don't think we – I don't know. We just don't know. I don't think we know anything about that. Thank you. And I don't think there's anything that would have changed the facts that we're relying on, which is the nature of her employment and her being there when he was incarcerated two separate times, knowing about his prior record. I don't think there's anything that would undercut those facts. There may be something that would even show more bias, but I don't know that question, the answer to that question. So if the Court doesn't have any questions, I'd like to reserve the rest of my time. You may. Thank you. May it please the Court. My name is Hannah Chung, and I represent the Respondent in this case. There are two issues present before the Court. First of all, an ineffective assistance of counsel claim. Second, the fair jury trial claim under the Sixth Amendment. The ineffective assistance of counsel claim is more straightforward because regardless of whether AEDPA applies or not, we have Strickland deference where we consider whether the defense counsel, an objective defense counsel could have reasonably decided to have kept this juror on. And the silence of the record after somebody says, I'm positively biased, and then says, dealing in terms of the law, I can definitely listen to both sides. That in itself says something about how all of the parties present interpreted the inflections and the demeanor of that particular juror. That, yes, from a cold record, from the transcript alone, you could say, I'm positively biased, as in I'm really biased. Or, I'm positively biased, as in I'm favorably biased. But clearly, the record by the very inaction of the defense counsel and the judge and even the prosecution shows that there was a clear understanding among the parties who had the benefit of the demeanor and the voice inflections to understand that I'm positively biased, as in I'm favorably biased. Kagan. The same question that I asked Mr. Denver, then, is does it matter, because we have case law which basically says knowledge of a defendant's criminal background, you know, is presumed to be prejudicial. And if this is treated as implied bias rather than actual bias, does it matter how we interpret that colloquy? Your Honor, it does. First of all, as far as ineffective assistance of counsel claim is concerned. I'm actually speaking of the Sixth Amendment. Sure, sure. So going to the Sixth Amendment claim, it does matter because implied bias has always been understood to be under extraordinary circumstances where it's so extraordinary that it must be a question of law, that there's no fact that could have persuaded me otherwise that this person would have been not biased, just by the very virtue of what she's saying.  Case law that says it has to be, you have to rule out every possibility of prejudice in order to have implied bias? Well, Your Honor, I'm not concerned. I know the word extraordinary is used, but what kind of texture or underpinnings have we given that? Sure. I'm looking toward both Fields v. Brown as well as the concurrence in Smith v. Phillips that a petitioner relies on, because the very fact that the concurrence goes on about how this is not about a factual finding, this is about a question of law where, by definition, they say, by definition, the facts can't rebut the conclusive presumption, if that's the case, we're talking about a situation where, by definition, nothing you could say to me, factually, would change my mind about whether a reasonable person could possibly remain objective under this situation. We're not dealing with that kind of extraordinary situation. In fact, under Fields v. Brown, they explicitly refused to imply bias in a situation where the juror was otherwise honest and there was no direct relationship with the victim, so. But here, we have a direct relationship. I mean, this person has been in Juvenile Hall and in other capacities the whole time, this person, the defendant, is also there as a lawbreaker. And so there is a criminal history there that it may even be that, you know, the jury doesn't get to know about that, given the timing of it. But here you have one juror who secretly knows this person from Juvenile Hall. It's pretty hard to say that that we couldn't impute implied bias in that case, isn't it? Your Honor, there's two responses to that. On the factual point, a factual response and then a legal response. On the factual point, these are just allegations in the verified petition and not a part of the State court record. We don't know if this is a social worker, as the Court of Appeals of the State court characterized this person, or if we are talking about a jailer as the petition introduced that way. There have been a hearing in the district court on this? Your Honor, the interesting one the interesting wrinkle in the Edpa law is that when the sort of language that a petitioner uses about whether the record was adequately developed, that's pre-Edpa law, pre-1996. And the cases that he's citing to are citing to cases where Edpa didn't apply. When it comes to 2254e, we're talking about a situation where you couldn't have developed that record earlier, and we're not talking about that sort of situation where we have some new discovery about what happened in a trial court. So our position would be no. On the legal point Your position is that there shouldn't have been no evidence or hearing is required, and you're stuck with this little state transcript. Yes. On the second point, going to the so that was the factual response. The legal response goes back to what does it mean to have a direct relationship? Your Honor, I understand you're concerned that, well, isn't this a direct relationship because let's say that this is a probation officer. He has some sort of direct relationship there. Well, that's not what direct relationship means as Fields v. Brown used it. When Fields v. Brown was talking about a direct relationship, they were talking about a direct relationship to the victim. In fact, Fields v. Brown, the very facts of that case show illustrate this, because we were in that case, we saw a juror, a potential juror who said, my wife was involved in a similar crime, and When you talk about direct relationship, you're talking about genealogical relationship. Sure. Like a relationship to the victim itself. So, for example, in Fields v. Brown, yes, there is a spouse, but that spouse was just a victim of a similar crime, not a victim of that particular crime before the court. So that wasn't considered a direct relationship to the victim. So it's interesting what they mean by direct relationship. They are not referring to a direct relationship with the defendant, but a direct relationship to the victim. And the critical factor, as Fields v. Brown stated, was that dishonesty in voir dire is a critical factor. When they're being honest, and when there otherwise isn't a direct relationship where a direct relationship with a victim. For example, bank employees of the same bank that got robbed in a different branch. Short of something like that, that's something they considered a direct relationship. It didn't have to be a genealogical relationship, because there is a direct relationship to that actual victim, as opposed to a relationship to the defendant in some way. Well, the Fields, go ahead, Judge Goldberg. If I could ask one question, do you agree with Appellant's position that on the implied bias claim, we can look to Ninth Circuit precedent, and we're not limited to Supreme Court precedent by the terms of AEDPA? Your Honor, yes. Unfortunately, what happened in the results of this case, the procedure of this case was that we did not assert procedural default because of certain, for reasons explained in our footnote in the appellee's brief. So, yes, 2254D does not apply, but 2254E does apply, because there were factual findings in the court, and just to explain what I mean by that very quickly, the court did say, go into voir dire, and as a court does have the independent responsibility to satisfy himself that the allegation of bias is unfounded under Dyer v. Calderon, so the court did engage in voir dire, did ask those questions, what do you mean by positively biased? And upon listening to the assertive statement, dealing in terms of the law, I can definitely listen to both sides. The court said, very good. But even without 2254E deference or D deference, it is our position that the court could look at the actual, assess for actual bias, and by the trial court's deference that they, the court itself is there to watch the demeanor of that juror and still conclude that this is a juror that can listen to both sides. I'm crediting the juror's statement that they, she can listen to both sides. There's still deference according to the trial court by virtue of the fact that the court was present and we on appeal were not. So go back to the question of relationship. In Fields, it talks about these exceptional circumstances which you've mentioned, but then it goes on to say, where the prospective juror has a relationship to the crime itself, which we don't have here, or to someone involved in a trial, or has lied. So there's like three different ways you can get implied bias according to Fields. But you're suggesting this relationship to someone involved in the trial has some special meaning related to the victim, and I'm wondering where I would look for support for that statement. Your Honor, I inferred that from the facts of the case, that on the one hand, this Fields v. – I see my time is up, but is it okay just to finish that question? Your Honor, on the one hand, there was some speculation in Fields v. Brown that that juror's wife was under – was involved in such a similar crime that maybe this really is the defendant, the same defendant who violated the wife. Right. And even there, so there is an implied relationship, some sort of relationship with the defendant. The Court was assertive in saying, no, this isn't quite the direct relationship we're looking for. This isn't sufficient for – to say that this is objectively, as a matter of law, implied bias. So we're talking about an extreme situation where somebody was even somebody's spouse, and that could have been an involvement with the defendant, and yet they couldn't say that this was an objectively implied bias situation. Here, by contrast, we have somebody who says she's positively biased. Probation officers are not the sort of people – especially if we're talking about juvenile probation officers or even a social worker. We're talking about much less of a situation than somebody whose spouse was victimized by the defendant. So we're not talking about these sorts of extraordinary circumstances where we should extend this uncertain law of implied bias into creating a whole category that, if you're a probation officer, you just can't stay objective, despite her expressions to the contrary and even expressions suggesting that she would be favorably biased. So with that, I ask the Court to affirm the judgment of the district court. Thank you very much. Thank you. Well, I think in Fields v. Brown, I think, Judge McKeown, you've hit the point. It's not just a direct relationship with a victim that would prejudice a juror. It could be anybody involved in it, and certainly in the defendant. So I think that trying to limit it to, you know, this would be somebody who would be sympathetic to the victim and, therefore, might be biased for the prosecution, it certainly has got to work the other way, too, that if somebody – But in this case, if – is it an extraordinary case where the person says, despite  Your Honor, under implied bias, their protestation of impartiality makes no difference at all. The Court's very clear on that in U.S. v. Gonzalez. What the Court has to look at is, would an average person in the position of that prospective juror be able to remain impartial? And I suggest to you – and it's not just the fact that she's a probation officer in general. The fact is that she served as one of the people who incarcerated Mr. Perry twice and knew about his prior record. I mean, it's not just her occupation. It's the connection through her occupation to Mr. Perry and to his prior record. So I think that this is one of those – and it's true that it's an unusual case where you have presumed bias, but there are cases where you have presumed bias, and I think this is one where you have somebody who's looking at this defendant and saying, I've seen this guy around before. I know what this guy's up to and everything. Unless the Court has any questions, I would submit it. Thank you. Thank you. Thank you both for your argument this morning. The case of Perry v. Haas is submitted.
judges: Wallace, McKeown, Gould